UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
KEVIN ERIC SCOTT,                                    :
                                                     :          **MEMORANDUM & ORDER**
                                    Plaintiff,       :
                                                     :          08-CV-2338 (ENV) (VVP)
                  -against-                           :
                                                     :
JANET NAPOLITANO, Secretary of Homeland              :
Security, ERIC H. HOLDER, Attorney General of the:
United States, CHRISTOPHER SHANAHAN, Field  :
Office Director of the New York Immigration and      :
Customs Enforcement Bureau of the Department of      :
Homeland Security, Office of Detention and Removal:
Operations, THE UNITED STATES DEPARTMENT:
OF HOMELAND SECURITY, AND THE UNITED  :
STATES DEPARTMENT OF JUSTICE,                        :
                                                     :
                                    Defendants.[1]   :
------------------------------------------------------------------:
                                                     x
VITALIANO, D.J.

      Plaintiff Kevin Scott filed the present complaint on June 11, 2008.  Scott seeks

injunctive, mandamus, and declaratory relief, largely from a final order of removal entered by an

immigration court ("IC") on August 24, 2005 (the "2005 final order").  Defendants  moved to

dismiss for lack of subject matter jurisdiction on the ground that the REAL ID Act of 2005, 8

U.S.C. § 1252 ("RIDA" or the "Act") mandates that judicial review of final orders of removal

take place exclusively in the courts of appeals.

      With the dismissal motion *sub judice*, on May 8, 2009, Scott sought by order to show

cause the entry of a preliminary injunction enjoining defendants from physically removing him

from the United States during the pendency of this action.  In so moving, Scott's attorney avers

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Secretary of Homeland Security Janet
Napolitano and Attorney General Eric H. Holder are automatically substituted as defendants in
this action.

that plaintiff, who had been free on an order of supervision, was recently taken into custody by agents of United States Immigration and Customs Enforcement ("ICE") and that ICE has begun the process of finally effectuating his removal to Jamaica, Scott's birth country. The Court signed the Order to Show Cause on May 11 and scheduled a hearing on the motion for May 20.[2]

At the May 20, 2009 hearing, the Court entertained argument from the parties on Scott's preliminary injunction motion and on the viability of his underlying claims for relief. For the reasons that follow, the Court concludes that, under RIDA, it is without jurisdiction to grant Scott either preliminary injunctive relief or the ultimate relief he initially sought in his complaint. Moreover, even if RIDA does not foreclose district court jurisdiction over Scott's action as styled, his claims and preliminary injunction motion still must fail because he has not exhausted administrative remedies and because this action itself is barred by *res judicata*.

## I.    BACKGROUND

In a very much related decision issued more than four years ago, the Second Circuit described Scott's case as tracking a "long, sinuous, almost Kafkaesque course." United States v. Scott, 394 F.3d 111, 113 (2d Cir. 2005). The Court assumes familiarity with this long history and here recites only those underlying facts and procedural developments that are most relevant to the instant action. Kafka, unfortunately for plaintiff, would be pleased with this sequel.

Kevin Scott is a native of Jamaica. He moved to the United States in 1981, when he was eight years old. In 1996, after having been convicted of various crimes, an IC issued a final order of deportation, *in absentia*, against him (the "1996 order"). Scott appealed this order, but,

_____

[2] Also on May 11, the Clerk's Office received and subsequently docketed an Emergency Motion for a Stay of Deportation, a document which appears to have been filed by Scott directly, rather than through counsel of record, and that is duplicative of his counsel's preliminary injunction motion. See Docket Entry No. 13. The Court denied the emergency motion as duplicative and because it had been improperly filed. See May 14, 2009 Order, Docket Entry No. 14.

in 1998, the Board of Immigration Appeals ("BIA") dismissed, determining that it was precluded from considering the appeal because the 1996 order was entered *in absentia*. In April 2001, Scott was deported to Jamaica pursuant to the 1996 order.

Sometime prior to October 2001, Scott reentered the United States. In March 2002, federal authorities charged Scott with illegal reentry in violation of 8 U.S.C. § 1326(a). Scott unsuccessfully moved to dismiss the indictment and, following his conviction on the underlying charge, appealed the denial of his motion to dismiss to the Second Circuit. In a January 11, 2005 decision, the Second Circuit reversed and quashed the indictment, holding that the 1996 order, upon which his deportation and subsequent illegal reentry conviction were based, was fundamentally unfair. Scott, 394 F.3d at 121.

Meanwhile, in September 2004, Scott, appearing in the IC *pro se*, moved Immigration Judge William Van Wyke to reopen his immigration proceeding. The government opposed, arguing that Scott was barred by federal regulations from reopening the case because he had been physically removed from the country pursuant to the very order he now sought to challenge. See 8 C.F.R. § 1003.23(b)(1) (providing that "[a] motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States"). Nevertheless, Judge Van Wyke agreed to reopen, concluding that the 1996 order was flawed because Scott had not received proper notice of the proceedings that had led to the order's issuance. As to the government's assertion that Scott's prior removal from the United States barred reopening, Judge Van Wyke concluded that "[n]o evidence has been submitted to show [that Scott had been deported], and the court has nothing in the record . . . to show that alleged fact." (Defs.' Opp. Br., Attachment A.) Judge Van Wyke further held that "if proof of a physical deportation is

3

presented to the court, with respondent having an opportunity to reply, the court may entertain a motion to reconsider." (Id.) There is no indication that either party sought to present any such evidence to the IC, and Judge Van Wyke subsequently transferred the reopened matter to a different IJ, Judge Alan Vomacka, for a new hearing on the merits.

However, Scott asserts that following transfer to Judge Vomacka for a merits decision, he came to conclude that the government's argument in opposition had been right, after all -- that is, he realized that the fact of his deportation should have barred Judge Van Wyke from reopening the matter under 8 C.F.R. § 1003.23(b)(1). Scott accordingly moved Judge Vomacka to withdraw his motion to reopen, but the Immigration Judge denied the request, concluding, as Judge Van Wyke had, that there was no proof that Scott had been deported.[3] On August 24, 2005, Judge Vomacka issued a final order of removal.

Crucially, Scott did not appeal the 2005 final order to the BIA. Instead, he sought to challenge it in a series of four separate actions. First, in September 2005, Scott filed a petition for review with the Second Circuit. In this petition, Scott argued under § 1003.23(b)(1) that his prior deportation barred the reopening of his case in the IC -- indeed, that the regulation actually deprived the IC of jurisdiction to hear the matter. On October 13, 2006, the Second Circuit dismissed Scott's petition on the ground that he had failed to exhaust his administrative remedies by neglecting to file an appeal to the BIA.

Second, while his initial petition for review was still pending in the Circuit, Scott filed a petition for a writ of habeas corpus in the District Court for the Southern District of New York. Scott argued, as he had to the Circuit, that the 2005 final order was invalid because the IC lacked

---

[3] The parties to the instant action have presented no record of this decision, nor any indication of the evidence, if any, that was placed before Judge Vomacka to help him reach it. Scott asserts in his brief here that "evidence was readily available in the government files" which would have indicated clearly that he had been deported. (Pl.'s Reply Br. at 3-4.)

jurisdiction to enter it. The district court, pursuant to RIDA, transferred Scott's habeas petition to the Court of Appeals as a petition for review; but on March 2, 2007, the Circuit dismissed this petition, as well, because Scott failed to comply with the court's scheduling order for the case.

Third, on May 31, 2007, Scott filed a motion with the IC (Judge Vomacka) seeking to reopen the 2005 final order to add evidence that he had, in fact, been deported. On June 5, 2007, Judge Vomacka denied the motion to reopen as untimely. However, according to Scott, Judge Vomacka now acknowledged that the proof of deportation was conclusive and claimed that he had believed that Scott had been deported all along, including back at the time he issued the 2005 final order.[4] Scott appealed Judge Vomacka's denial of the motion to reopen to the BIA, which dismissed.

Fourth and finally, on June 11, 2008, Scott initiated the current action. Scott seeks (1) a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA") that the 2005 final order is void and unenforceable; (2) an order under the Mandamus Act, 28 U.S.C. § 1361, requiring defendants to rescind the 2005 final order; (3) a declaration under the DJA that the 1996 order is void and unenforceable; (4) an order under the Mandamus Act requiring defendants to rescind the 1996 order; and (5) an injunction restraining defendants from attempting to remove Scott from the United States on the basis of either the 2005 final order or the 1996 order.

## II.  DISCUSSION

Distilled, Scott's primary challenge is to the 2005 final order of removal, which he claims was issued without jurisdiction and thus is invalid as a matter of law. Defendants' initial argument in opposition is that this Court lacks jurisdiction to hear Scott's challenge under the

---

[4] The parties have not provided the Court with any record of Judge Vomacka's June 5, 2007 decision.

clear language of RIDA. The burden of establishing jurisdiction is Scott's as the party invoking

it. Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57 (2d Cir. 2006).

A.      **Jurisdictional Principles**

Section 1252(a)(5) of RIDA mandates that judicial review of all administratively final

orders of removal take place exclusively in the courts of appeals:

> Notwithstanding any other provision of law (statutory or nonstatutory), including
> section 2241 of Title 28, or any other habeas corpus provision, and sections 1361
> and 1651 of such title, a petition for review filed with an appropriate court of
> appeals in accordance with this section shall be the sole and exclusive means for
> judicial review of an order of removal entered or issued under any provision of
> this chapter, except as provided in subsection (e) of this section [dealing with
> "expedited" orders of removal, and not applicable here]. For purposes of this
> chapter, in every provision that limits or eliminates judicial review or jurisdiction
> to review, the terms "judicial review" and "jurisdiction to review" include habeas
> corpus review pursuant to section 2241 of Title 28, or any other habeas corpus
> provision, sections 1361 and 1651 of such title, and review pursuant to any other
> provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5); see also 8 U.S.C. §§ 1252(b)(2) & (9) (petitions for review of orders of

removal "shall" be filed with the court of appeals and encompass "all questions of law and fact,

including interpretation and application of constitutional and statutory provisions, arising from

any action taken or proceeding brought to remove an alien from the United States"); Spina v.

Dep't of Homeland Sec., 470 F.3d 116, 124 (2d Cir. 2006) (recognizing Congress's "clear intent

in enacting [RIDA was] to have all challenges to removal orders heard in a single forum, i.e., the

courts of appeals" and accordingly treating a district court's merits decision on a habeas motion

as "non-existent") (internal quotations omitted).

Short and simple, if an alien seeks review of a final order of removal, regardless of how

the alien's claim for relief is styled, jurisdiction rests exclusively with the appropriate court of

appeals. § 1252(a)(5) (jurisdiction is exclusive "[n]otwithstanding any other provision of law");

§ 1252(b)(9); see Bhatt v. Board of Immigration Appeals, 328 F.3d 912, 914-15 (7th Cir. 2003)

(district court lacked jurisdiction over alien's mandamus petition seeking to force BIA to reconsider its order).

Finally, these provisions of § 1252 operate to strip district courts of jurisdiction to stay an order of removal, as well. See, e.g., Acosta-De La Cruz v. United States, No. 07-CV-5386, 2008 WL 2700293, at *2 (E.D.N.Y. July 9, 2008); Rodney v. Gonzalez, No. 05-CV-3407, 2006 WL 73731, at *2 (E.D.N.Y. Jan. 10, 2006) (concluding that § 1252 "necessarily deprived district courts of jurisdiction to grant stays of removal").

**B.    This Court Lacks Jurisdiction to Review Scott's Claims Under RIDA**

Scott's complaint asserts jurisdiction under the federal question statute, 28 U.S.C. § 1331, the All Writs Act, 28 U.S.C. § 1651, the Mandamus Act, and the DJA. None of these statutes is sufficient to survive the jurisdiction-stripping language of RIDA, and Scott does not seriously argue otherwise. Instead, in his brief, Scott contends for the first time that the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 703, and 706 confers district court jurisdiction.

The APA allows judicial review of final agency decisions and permits a reviewing court to "compel agency action unlawfully withheld" or set aside agency action that was made "without observance of procedure required by law." 5 U.S.C. § 706(1), (2)(D); see Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (a § 706(1) claim lies only where "a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take") (emphasis in original). Scott contends that 8 C.F.R. § 1003.23(b)(1) establishes a nondiscretionary jurisdictional bar that requires an immigration judge to deny a motion to reopen made by an alien who previously has been deported under the challenged final order of removal. If the IC fails to dismiss in accordance with § 1003.23(b)(1), Scott claims, such failure

7

constitutes the withholding of lawful agency action or a violation of legally prescribed procedure, reviewable by a district court under the APA.

This argument does not address RIDA's clear expression that all challenges to final orders of removal shall be made in the courts of appeals. 8 U.S.C. § 1252(a)(5). Scott tries to make the case that this Court has jurisdiction, notwithstanding § 1252(a)(5), by citing to Sharkey v. Quarantillo, 541 F.3d 75, 85-87 (2d Cir. 2008) (holding that the district court had jurisdiction under the APA to review ministerial, nondiscretionary agency acts related to an alien's adjustment of status, notwithstanding language in § 1252(a)(2)(B) that strips all federal courts of jurisdiction to review "any judgment regarding the granting" of lawful permanent resident status).

Scott's reliance on Sharkey is misplaced. As noted, Sharkey involved ministerial acts relating to an alien's adjustment of status, not, as here, a final order of removal. Pointedly, the Second Circuit explicitly held that § 1252(a)(5) was "inapplicable" to the alien's claim in Sharkey. Id. at 82 n.7; see Ruiz v. Mukasey, 552 F.3d 269, 273-74 & n.3 (2d Cir. 2009) (recognizing district court jurisdiction over APA challenges to agency acts in an action seeking review of an adjustment of status decision, but noting expressly that §§ 1252(a)(5) and 1252(b)(9) "do not preclude a district court from exercising jurisdiction [over the status decision] *because such a denial is unrelated to any removal action or proceeding*") (emphasis added); see also Nyemba v. Prendes, No. 06-CV-772, 2006 WL 3300448, at *3 & n.8 (W.D. Okla. Oct. 24, 2006) (no jurisdiction over complaint filed under the habeas statute, the All Writs Act, the federal question statute, the DJA, and the APA and alleging, *inter alia*, that Homeland Security deprived plaintiff of due process when it "failed to follow its own procedures with respect to staying the execution of [plaintiff's] removal order and the adjudication of his motion to reopen

and asylum petition;" due process claims "clearly" challenged plaintiff's order of removal, and

jurisdiction over such a challenge was vested exclusively in the courts of appeals).

Nor is it clear why the reasoning that animated the Sharkey Court in the adjustment of

status context would govern here, where the strictures of § 1252(a)(5) do apply. The IC

determination that Scott targets -- its decision to grant him his request to reopen his case, and to

keep it open over his later objections, because the IC concluded that there was no proof of

deportation -- does not appear to be the same sort of ministerial, nondiscretionary act Sharkey

contemplates.[5]  The IC may have gotten this decision wrong -- if nothing else, it is crystal clear

that Scott was, in fact, deported (though the state of the administrative record on which the IC

relied in reaching a contrary conclusion is less certain).  But it does not follow under the

statutory framework that the decision is one for this Court -- as opposed to the court of appeals --

to review.  Given Congress's "clear intent . . . to have all challenges to removal orders heard in a

single forum, i.e., the courts of appeals," an attack on an IC's conclusion that the record did not

support foreclosing a new hearing and decision must be brought in the Circuit.  Spina, 470 F.3d

at 124; Ruiz, 552 F.3d at 273-74 & n.3; Nyemba, 2006 WL 3300448, at *3 & n.8.  Moreover,

because the Court is without jurisdiction to adjudicate Scott's underlying action, it does not have

---

[5] As noted elsewhere, Scott asserts that 8 C.F.R. § 1003.23(b)(1) is jurisdictional -- that the
regulation deprives an IC of the very power to reopen an alien's case once he has been deported.
This is a characterization that the BIA apparently shares, see Matter of Armendarez-Mendez, 24
I. & N. Dec. 646 (B.I.A. Oct. 6, 2008), and that defendants do not dispute.  Although not
material to the Court's conclusion, it appears that the issue is not nearly so settled.  While the
Fifth and Sixth Circuits have upheld the BIA's interpretation of § 1003.23(b)(1) as reasonable,
see Mansour v. Gonzales, 470 F.3d 1194, 1198 (6th Cir. 2006); Navarro-Miranda v. Ashcroft,
330 F.3d 672, 676-77 (5th Cir. 2003), the Fourth and Ninth Circuits have reached a different
conclusion, holding (each on different grounds) that an alien may move to reopen even after
being deported, see William v. Gonzales, 499 F.3d 329, 332 (4th Cir. 2007); Lin v. Gonzales,
473 F.3d 979, 980 (9th Cir. 2007).  The Second Circuit appears not to have weighed in on the
question, and the Court need not do so here.

9

the power to enter the preliminary injunction he now requests. <u>Acosta-De La Cruz</u>, 2008 WL

2700293, at *2; <u>Rodney</u>, 2006 WL 73731, at *2.

**C.** **Scott's Failure to Exhaust Administrative Remedies Forecloses His APA Claim**

Even if Scott were correct that the APA allows him to bring this action in the district

court, the Court still would be without subject matter jurisdiction to hear it. It is well established

that a party may not seek judicial review of an agency action under the APA unless it has first

exhausted all required administrative remedies. <u>See, e.g.</u>, <u>Howell v. INS</u>, 72 F.3d 288, 291 (2d

Cir. 1995). While it is true that courts cannot impose an exhaustion requirement where one is

not expressly required by statute, <u>see</u> <u>Darby v. Cisneros</u>, 509 U.S. 137, 153 (1993), here, RIDA

contains such an express requirement. Section 1252(d)(1) of the Act permits courts to "review a

final order of removal only if . . . the alien has exhausted all administrative remedies available to

the alien as of right." <u>See</u> <u>Karaj v. Gonzales</u>, 462 F.3d 113, 117 (2d Cir. 2006). Because Scott

did not appeal the 2005 final order of removal to the BIA, as required by RIDA, he cannot now

seek relief under the APA. <u>See</u> <u>Jaskiewicz v. Dep't of Homeland Sec.</u>, No. 06-CV-3770, 2006

WL 3431191, at *3 (S.D.N.Y. Nov. 29, 2006) (holding that district court lacked jurisdiction to

hear alien's APA challenge to alleged nondiscretionary decision concerning adjustment of status

because alien failed to exhaust under § 1252(d)).

**D.** **Scott's Action Is Barred by Res Judicata**

As indicated earlier, this action is not the first that Scott has filed to challenge the 2005

final order. After failing to appeal the 2005 order to the BIA, Scott initiated, among other

actions, a petition for review in the Second Circuit. Scott acknowledges that the exact same

jurisdictional argument that forms the basis for the present action was advanced at the Circuit.

Fatally, the petition for review was decided, unfavorably to Scott on the merits for failure to

exhaust administrative remedies. A "final judgment on the merits of an action precludes the

parties . . . from relitigating issues that were or could have been raised in [the first] action."

Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 400 F.3d 139, 141 (2d Cir. 2005). The earlier, final Second Circuit judgment on Scott's petition for review precludes him from relitigating his challenge to the 2005 final order here, see Acosta-De La Cruz, 2008 WL 2700293, at *3, even if this Court would have subject matter jurisdiction otherwise.

## III.  CONCLUSION

For the foregoing reasons, the Court concludes that it is without subject matter jurisdiction to adjudicate Scott's claims. Therefore, his motion for a preliminary injunction is denied and the motion of defendants to dismiss is granted in its entirety. The complaint is dismissed with prejudice. See De Ping Wang v. Dep't of Homeland Sec., 484 F.3d 615, 617-18 (2d Cir. 2007).

The Clerk is directed to enter judgment for defendants and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
        May 26, 2009

ERIC N. VITALIANO
United States District Judge